**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

CARPENTERS' DISTRICT COUNCIL OF    )
GREATER ST. LOUIS and VICINITY, et al.,  )
                                         )
           Plaintiffs,                )
                                         )
          v.                        )        No. 4:13-CV-1603 CAS
                                         )
NEIER SERVICES COMPANY, INC., d/b/a   )
PRO SERVICES,                   )
                                       )
          Defendant.             )

## MEMORANDUM AND ORDER

This closed matter was brought under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and Sections 502(g)(2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(g)(2) and 1145. It is currently before the Court on plaintiffs' Amended Motion For a Creditor's Bill in Equity and to Pierce the Corporate Veil. Plaintiffs are a labor organization, several ERISA employee benefit plans, and the trustees and fiduciaries of those plans. Plaintiffs sued defendant Neier Services Company, Inc. ("NSC") for unpaid contributions to the plans required under a collective bargaining agreement and obtained a judgment against it. Plaintiffs now seek to collect the judgment from NSC's alleged alter ego, Pro Services Contractors, Inc. NSC opposes the motion and it is fully briefed. For the following reasons, plaintiffs' motion will be denied.

## I. The Parties' Violations of Federal Rule of Civil Procedure 5.2(a) and Local Rule 2.17

As a threshold matter, the Court must address the parties' actions in filing exhibits to their memoranda that contain personal data identifiers. Federal Rule of Civil Procedure 5.2(a) provides:

> **(a) Redacted Filings.** Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number,

taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing must include only:

(1) the last four digits of the social-security number and taxpayer-identification number;
(2) the year of the individual's birth;
(3) the minor's initials; and
(4) the last four digits of the financial-account number.

Rule 5.2(a), Fed. R. Civ. P. The Rule was adopted to comply with the E-Government Act of 2002, Public Law 107-347. See Rule 5.2 advisory committee's note. This Court's Local Rule 2.17(A) similarly requires redaction of personal data identifiers and also states that home addresses of non-parties should not appear in any filing, but if a home address must be included, only the city and state may be listed. E.D. Mo. L.R. 2.17(A)(5).

Plaintiffs blatantly violated these rules by filing numerous exhibits that contain social security and taxpayer identification numbers, complete financial account numbers, and full home addresses of non-parties to this action. (See various exhibits to Docs. 20, 26, 27.) Defendant violated Local Rule 2.17(A)(5) by filing exhibits that include full home addresses of non-parties to this action. (See various exhibits to Doc. 35.)

Upon discovering the extent of the disclosure violations in the record, the Court ordered the Clerk to restrict access to the improperly filed exhibits to protect the privacy of the individuals and entities whose personal data identifiers are listed therein. However, "The clerk is not required to review documents filed with the court for compliance with this rule. The responsibility to redact filings rests with counsel and the party or non-party making the filing." Fed. R. Civ. P. 5.2 advisory committee's note. As another judge in this Circuit has observed, the consequences of violating the Rule are serious and, as a result, violations can warrant the imposition of sanctions:

"Parties must remember that any personal information not otherwise protected by sealing or redaction will be made available over the internet." Fed. R. Civ. P. 5.2 advisory committee's note. Every federal district has now embraced electronic filing. The days of attorneys being able to ignore the computer and shift blame to support staff in the event of an error are gone. The consequences are simply too serious. To the extent there are attorneys practicing in federal court who are under the impression that someone in the Clerk's office will comb their filings for errors and call them with a heads-up, the Court delivers this message: It is the responsibility of counsel to ensure that personal identifiers are properly redacted. The Court does not have the resources to review and correct filings. The days of paper filings—with accessibility to files limited not by law but by the practical challenges of driving downtown, paying for parking, checking out the file, and paying the friendly clerk of court to make copies—are gone. Attorneys who are slow to change run the very real risk of sanctions.

Allstate Ins. Co. v. Linea Latina De Accidentes, Inc., 2010 WL 5014386, at *2-3 (D. Minn. Nov. 24, 2010) (imposing sanctions where plaintiffs took no opportunity to redact birth dates, minors' names, financial account numbers, and at least one social security number for "months after they had received notice of violations of Rule 5.2(a)"; requiring attorney to pay monetary sanction of $300 and pay for credit monitoring for the affected individuals).

The Court is particularly troubled by plaintiffs' disregard of their obligations under Rule 5.2(a) and Local Rule 2.17(A), as plaintiffs are frequent litigants who have filed over 200 similar cases in this Court. Plaintiffs' attorney Greg A. Campbell has appeared in over 1200 cases here. While some of these cases and appearances pre-date the E-Government Act of 2002, many do not. The potential consequences arising from the disclosure of personal data identifiers are very serious and are too well known to require discussion here. In the future, plaintiffs and their counsel must be vigilant to avoid disclosing personal data identifiers, and must redact such information or file any documents that contain personal data identifiers under seal, in accordance with this Court's

procedures.[1]  See Section VI.B., Administrative Procedures for Case Management/Electronic Case Filing (CM/ECF).

Mr. Campbell will be ordered to provide a copy of Rule 5.2 and Local Rule 2.17 to each attorney, legal assistant or other person at his law firm who engages in electronic filing or directs others to, and instruct them to read the Rules.  Any future disclosures of personal data identifiers by plaintiffs or their counsel may result in the imposition of sanctions.  Mr. Campbell shall file a verified statement indicating his compliance with this order.

## II. Procedural History

On August 16, 2013, plaintiffs filed suit against NSC to collect delinquent contributions, liquidated damages, interest, attorneys' fees and costs owed pursuant to collective bargaining agreements and under the terms of ERISA, 29 U.S.C. § 1132.  NSC was served with summons and complaint on August 21, 2013, but did not enter an appearance or respond to the complaint.  A Clerk's Entry of Default was entered on October 15, 2013, and the Court entered default judgment against NSC on October 25, 2013 in the amount of Thirty-Three Thousand Nine Hundred Twenty-Five Dollars and Seventy-Four Cents ($33,925.74).

Plaintiffs have attempted to collect the judgment but to date have only collected $42.10.  By the instant motion, plaintiffs seek to satisfy the remainder of their judgment against NSC from assets of its alleged alter ego, Pro-Services Contractors, Inc. ("PSC").

---

[1]Plaintiffs and their counsel should give consideration to reviewing other cases they have filed in this Court, both pending and closed, and filing motions to seal any documents that disclose personal data identifiers in violation of Rule 5.2 or Local Rule 2.17.

4

## III. Facts

NSC is an administratively dissolved Missouri corporation that performed general contracting work for residential and commercial customers. NSC did business under the name Pro-Services. NSC was incorporated on May 12, 2009 and registered the fictitious name Pro-Services on July 2, 2009. NSC's original officers were Marie Neier, President and Secretary, and Todd Neier, her husband, Vice President. Todd Neier was the sole director. (2009 Annual Report.)[2] NSC's principal place of business was the Neiers' home address.

NSC was administratively dissolved on December 22, 2009 for failure to file an annual registration report but was reinstated on or about March 7, 2012. In 2011, NSC's directors were Marie Neier and Ross Boring of Brainerd, Minnesota. (2011 Annual Report.) In 2012, Deborah Orcutt became NSC's Secretary and Marie Neier became the sole director. (2012 Annual Report.) Ms. Orcutt is an accountant and owns an accounting firm, B. L. Orcutt & Co., Inc., located at 9714 Lackland Road in Overland, Missouri. Ms. Orcutt handled payrolls, performed bank reconciliations, and handled payroll taxes and tax returns for NSC. Ms. Orcutt was made Secretary so she could sign NSC's payrolls and tax returns.

In March 2013, Todd Neier moved out of the Neier family home and made efforts to purchase NSC from Marie Neier. Todd Neier testified that Mrs. Neier refused his buyout offer because she did not like the fact that the money to purchase it would be coming from Ross Boring and his wife Dixie. NSC's 2013 Annual Report, filed June 29, 2013, lists Todd Neier as President, Deborah Orcutt as Secretary, no Vice President, and Todd Neier and Ross Boring as directors. The

---

[2]The Court takes judicial notice of the Missouri Secretary of State's records concerning NSC and PSC. NSC's 2009, 2010 and 2011 Annual Reports were all filed on March 7, 2012.

principal place of business was changed to 9714 Lackland Road in Overland, Missouri. This location was also the business address of NSC's Secretary and accountant, Ms. Orcutt.

A Statement of Correction dated August 8, 2013 was filed with the Missouri Secretary of State, signed by Todd Neier as Vice-President. This Statement of Correction changed NSC's 2013 Annual Report to reflect Marie Neier as President and sole director, and Todd Neier as Vice President and Secretary. The reason stated for the correction was, "Annual Registration Report was filed with the understanding that the business was to transfer however that did not take place so the correction are [sic] to put back on the board and officers at that time." Mr. Neier filed for divorce in August 2013. Ms. Neier resigned as NSC's accountant in August 2013.

On March 30, 2015, another Statement of Correction to NSC's 2013 Annual Report was filed with the Secretary of State, signed by Todd Neier. The signature line on the Statement of Correction shows Mr. Neier's title as "None".[3] The error corrected was described as: "Principal Place of Business changed to 12 Lawrence Dr.[,] Creve Coeur, Mo 63141 as of August 12, 2013. Todd Neier resigned as of August 12, 2013 as Vice President and Sec'y[.]" The reason given for the correction was: "Todd Neier has no association with the corporation as of August 30, 2013[.]" NSC was administratively dissolved on April 21, 2015 for failing to file an annual report.

Todd Neier was employed by NSC as a project manager and worker. In that role, Mr. Neier hired and fired employees, bid jobs, directed employees in the field, went to suppliers and obtained supplies, performed carpentry work, and signed checks and contracts on behalf of NSC. Marie Neier worked on billings, bidding and invoicing. Ms. Orcutt handled NSC's payrolls, payroll taxes and tax returns, and performed its bank reconciliations. Ms. Orcutt made a personal loan to NSC

---

[3]NSC did not file a 2014 Annual Report.

in the amount of $30,000. NSC had a bank account with Enterprise Bank and Trust. In August 2013, NSC had four employees: Todd Neier, Dwayne Hills, Dave Becker and Mike McGrotty. In August 2013, NSC was working on a job for SSS Investments but could not finish the job because it had no money to pay employees. Todd Neier testified that he left NSC because "there was no money to pay me and to support my family." Neier Dep. at 33:15-16.

Ross and Dixie Boring were friends of Todd Neier's family who previously lived near them in St. Louis. Mr. Neier first met the Borings when he was five or six years old. The Borings loaned over $21,000 to NSC after Neier spoke with them about seeking financial assistance for the company. Some of the money NSC borrowed from the Borings went to pay its bills and purchase supplies for projects. Ross Boring communicated with the plaintiff employee benefit funds on NSC's behalf several times in 2011, including sending a fax to their controller and accountant, Juli Laramie, that stated it was from "Ross Boring For Pro Services." Campbell Suppl. Aff., Ex. 13. Ross Boring communicated by email with Todd Neier in 2011 and 2012 concerning day-to-day details of NSC's jobs and business, referring to "we" and "our" many times in connection with its operation, offering advice, and making suggestions for contract language.[4] In February 2012, Ross

---

[4]For example, an email of October 21, 2011 from Ross Boring to Todd Neier stated in part,

When you can I need the receipts for the motel rooms he paid for and for all the materials purchased last week and this including Sam's $100 plus today as well as how much we owe him for his fine work. Without those numbers our payables look lower than they actually are.

I would also ask that you check to be sure our $100 weekly payment check went into the mail today to the carpenters union
. . . .

We have made tremendous progress over the past 6 weeks. I have some concern with the lack of business going forward so one item we really need to discuss is Mary's bathroom job. That would certainly be a nice fill in until SnS actually

Boring communicated by email with the project manager of NSC's general contractor Abayla Contracting Services, Inc..  The email sent shop drawings to Abayla and discussed project details and supplies.  The email was signed, "Ross Boring, Pro Services."  <u>See</u> Campbell Suppl. Aff., Ex. 9.  Mr. Boring sent a lengthy email to Todd Neier in July 2012 that explained and discussed potential problems with language in a proposed subcontract, and "recommend[ed] that we try to handle this like the last project we did with Zernco and get them to sign our contract without Pro-Services' [sic] signing theirs."  <u>Id.</u>, Ex. 10.  Mr. Boring signed a lien waiver on behalf of NSC in March 2012.  <u>Id.</u>, Ex. 12.  In September 2011, Mr. Boring emailed Ms. Orcutt concerning money the Borings had put into NSC, and discussing "what [Ms. Orcutt was] working on for us and the union."  <u>Id.</u>, Ex. 17.

On August 12, 2013, Pro Services Contractors, Inc. ("PSC") was incorporated in Missouri. It was owned by Ross and Dixie Boring.  Its registered agent was Deborah Orcutt, and the incorporators were Ross and Dixie Boring.  PSC's officers were Dixie Boring, President; Ross Boring, Vice-President; Deborah Orcutt, Secretary; and the Borings, Directors.  PSC's principal place of business was 9710 Lackland Road in Overland, Missouri, near to Ms. Orcutt's accounting business.  (2013 Annual Report.)[5]  Todd Neier spoke with the Borings about working for PSC before

---

releases more projects.

You were dead tired when we spoke about the quotes John asked for on the trash enclosures and I got the impression you weren't real happy with our tuck pointer. I know John asked for quotes before we started the Maplewood store so I would appreciate an update.

. . . .

Supplemental Aff. of Greg A. Campbell, Ex. 8.

[5]PSC filed Articles of Dissolution by Voluntary Action on January 30, 2015 and a Request for Termination on April 8, 2015.

he quit NSC. The Borings came up with the idea to create PSC after Neier spoke with them about the problems NSC was having.

In August 2013, PSC took over and completed the SSS Investments job that NSC had been working on. NSC and PSC separately billed SSS Investments for the portions of the job that each company performed. PSC is a general contractor for commercial and residential projects but mainly commercial. Todd Neier testified the general contracting work PSC performs is different than the general contracting work NSC performed because PSC does "bigger jobs."

Todd Neier works for PSC as sales manager and also in the field as a carpenter. Mr. Neier goes out and finds work, bids projects, directs the employees in the field, and obtains supplies. Mr. Neier collects resumes or information from potential employees and recommends who the Borings should hire. Mr. Neier does not sign checks for PSC and does not have an ownership interest in PSC, although his public LinkedIn profile shows him as "owner" of "Pro-Services" from February 2004 to the present.[6]

The Borings own PSC. Ross Boring's job duties are billing and bidding. Dixie Boring types up the bids and does the invoicing. Todd Neier testified that the Borings visit job sites when they are in St. Louis from Minnesota, normally twice a year, but Ms. Orcutt testified that while the Borings come to St. Louis "every now and then in the office," they never visit job sites.

Todd Neier testified that PSC has four employees: Neier, Dwayne Hills, David Lichtenstein, and Robert Slater. However, PSC's Missouri Department of Labor and Industrial Relations quarterly contribution and wage report for the first quarter 2014 does not list an employee named David Lichtenstein. Instead, it lists a David Becker with the same Social Security Number as the

---

[6]See https://www.linkedin.com/pub/todd-neier/25/660/a02 (last accessed June 24, 2015).

David Becker who had worked for NSC. Thus, three of PSC's four employees were previously employed by NSC.

Deborah Orcutt handles payroll, payroll taxes and tax returns for PSC and signs checks on its behalf, as she did for NSC. PSC's bank account is at Enterprise Bank and Trust, as was NSC's. Ms. Orcutt testified that NSC owned a Ford truck that was repossessed by Ross Boring. Todd Neier testified that NSC owned a trailer but did not own a Ford truck. Neier testified that the truck was titled in his name personally, that Ross Boring held a lien on the truck, and NSC made payments to Mr. Boring for the truck. At some point Mr. Boring repossessed the truck because NSC failed to make the payments, and the same truck is now being used for PSC's business but is not titled in Todd Neier's name. NSC used a dump trailer that was owned by Todd Neier's friend Ron Viemann. After PSC was formed, Mr. Viemann sold the dump trailer to the Borings and it is used in PSC's business.

**IV. Discussion**

I.

This matter is governed by ERISA, 29 U.S.C. §§ 1132(a)(3)(ii) and 1145, and the LMRA, 29 U.S.C. § 185(a). Jurisdiction and venue are proper in this Court.

Plaintiffs assert that PSC is an alter ego of NSC. If this is correct, then plaintiffs can pierce PSC's corporate veil and attempt to collect from it the judgment they hold against NSC. The alter ego doctrine developed under the National Labor Relations Act, 29 U.S.C. §§ 151 et seq., focuses "on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement." Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997) (quoted case omitted); see

also Trustees of the Graphic Commc'ns Int'l Union Upper Midwest v. Bjorkedal, 516 F.3d 719, 727 n.2 (8th Cir. 2008) (citing cases).

"In determining whether two business entities are alter egos, . . . courts consider a variety of factors, including whether the two entities have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." Midwest Precision Heating and Cooling, Inc. v. N.L.R.B., 408 F.3d 450, 458 (8th Cir. 2005) (cited case omitted). Courts "also consider whether a motive for the new entity's taking over of the operations of the old entity was to evade responsibilities under the Act and whether dealings between the two entities were at arm's length." Id. at 458-59 (cited case omitted). This test is flexible, so the lack of any particular factor does not preclude a finding of alter ego status. Id. at 459 (citing N.L.R.B. v. Campbell-Harris Elec., Inc., 719 F.2d 292, 296 (8th Cir. 1983) (affirming NLRB finding that ownership and management of first company, a two-man partnership, was substantially identical to that of second company, a sole proprietorship)).

Federal courts have "the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law." H.H. Robertson Co. v. V.S. DiCarlo General Contractors, Inc., 994 F.2d 476, 477 (8th Cir. 1993) (citation omitted). The Eighth Circuit has "recognized the availability of the creditor's bill in equity under Missouri law." Id. The creditor's bill in equity is a long-established tool to assist creditors who seek "to enforce the payment of debts out of assets that cannot be reached by traditional means of execution on a judgment established in a suit at law." Shockley v. Harry Sander Realty Co., Inc., 771 S.W.2d 922 (Mo. Ct. App. 1989).

Prerequisites to the issuance of a creditor's bill are the "existence of a judgment, the issuance of an execution against assets of the judgment debtor and a nulla bona return thereon." Id. at 925.

The fact that a corporation's alleged alter ego was not itself either a judgment debtor or a party in the original action is irrelevant. H.H. Robertson Co., 994 F.3d at 478. Although a creditor's bill can be brought in a separate equitable action, it is appropriate to bring it by motion in the underlying lawsuit where judgment was originally obtained. Fleming Cos., Inc. v. Rich, 978 F. Supp. 1281, 1294 (E.D. Mo. 1997). "A creditor's bill is considered the equitable equivalent of garnishment on execution and is comparable to proceedings supplementary to and in aid of execution." Shockley, 771 S.W.2d at 925 (citing United States ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir. 1979)).

## II.

Plaintiffs have established the necessary prerequisites to the issuance of a creditor's bill, as they have a judgment against NSC, they issued execution against its assets at Enterprise Bank, and the garnishment was returned with the response that NSC had no accounts. To prevail on their motions, plaintiffs must also establish that PSC is NSC's alter ego.

Plaintiffs contend that PSC is the alter ego of NSC because of the commonality of (1) constructive ownership, (2) management and supervision, (3) business purpose, (4) operations, (5) employees, (6) customers, (7) equipment, and (8) facilities. Plaintiffs also argue that PSC was formed to allow NSC to avoid its obligations under the collective bargaining agreement after plaintiffs threatened legal action for NSC's delinquencies. Plaintiffs point to the facts that PSC was formed less than ninety days after they threatened legal action on NSC's delinquencies, and immediately after PSC's formation, NSC was out of business as Mr. Neier, Ms. Orcutt, the Borings and the employees left to go to PSC, leaving Mrs. Neier with an indebted business she had never managed.

Plaintiffs assert that Todd Neier was an owner of NSC based on his family ties and familial control with his former wife Marie Neier, and that the Borings had a financial interest in NSC based on the loans they made to it. The Court finds that Todd Neier is properly considered to have been an owner of NSC based on his spousal connection with Marie Neier,[7] but there are no facts to show that Todd Neier has any ownership interest in PSC, or that NSC or Todd Neier have any financial control over PSC. The uncontroverted facts are that the Borings are the sole owners of PSC. Further, while the Borings loaned money to NSC and Mr. Boring had involvement in NSC's business operations that went beyond mere creditor status, there are no facts to show that either of the Borings had an ownership interest in NSC, or that they had financial control over NSC. Therefore, there is no common ownership between NSC and PSC. This factor weighs against alter ego status and is in fact determinative of that status, as discussed below.

The Court finds that Todd Neier controlled the day-to-day operations of NSC, as he was its project manager and bid jobs, hired and fired employees, directed employees in the field, obtained supplies, and signed checks and contracts on its behalf, in addition to working for it as a carpenter and serving as an officer and director. The Court finds that Mr. Neier occupies a similar but not identical status with PSC, as he is its sales manager, bids projects, goes out and finds work, directs the employees in the field, and obtains supplies in addition to working for it as a carpenter. Mr. Neier does not have authority to sign checks for PSC or to hire on its behalf, but instead collects resumes or information from potential employees and recommends hires to the Borings. Mr. Boring

_____

[7]See, e.g., N.L.R.B. v. Dane County Dairy, 795 F.2d 1313, 1322 (7th Cir. 1986) ("Familial control constitutes common ownership and control."); Greater St. Louis Constr. Laborers Welfare Fund v. Mertens Plumbing and Mech., Inc., 552 F.Supp.2d 952, 955 (E.D. Mo. 2007) (spousal connection between owners establishes common ownership); Greater St. Louis Construction Laborers Welfare Fund v. Kirkwood Masonry, Inc., 2014 WL 1048597, at *3 (E.D. Mo. Mar. 14, 2014) (businesses deemed to have common ownership where owned by brothers-in-law).

handles billing and is involved in bidding, and Mrs. Boring types up bids and handles invoicing. The fact that PSC's owners only come to St. Louis twice each year supports the finding that Mr. Neier controls PSC on a day-to-day basis in the field. This factor supports alter ego status.

The Court finds that NSC and PSC shared the same business purpose, as each performed residential and commercial contracting work. Although PSC worked on bigger commercial projects than NSC did, the common business purpose factor does not require that services performed by two companies be identical. See Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 928-29 (8th Cir. 1984) (corporation was alter ego of sole proprietorship although corporation did mostly commercial masonry work and sole proprietorship did mostly residential masonry work).

NSC and PSC used some of the same equipment, had substantial continuity of employees, utilized the same accountant and had their accounts at the same bank. NSC and PSC shared at least one customer, as PSC completed the SSS Investments job that NSC was engaged in at the time PSC began operating, apparently without any break in service to the customer. These factors weigh in favor of a finding of alter-ego status.

With respect to corporate purpose, the Court finds that PSC was formed in order to allow Todd Neier to continue in the same business he conducted with NSC, but there is no persuasive evidence that PSC was formed with the intent to avoid NSC's obligations to the plaintiffs. It is undisputed that Todd Neier attempted to purchase NSC from Marie Neier during the Neiers' divorce proceedings, but Marie rejected the offer. Only after the purchase offer was rejected did the Borings form PSC. It is true that both NSC and PSC did business under some form of the name Pro-Services, and Todd Neier has held himself out as the owner of Pro-Services from 2004 to the present. While PSC's use of a very similar name to that under which NSC did business enabled it to maintain name recognition without the burden of NSC's liabilities, there is no evidence PSC was

formed in order to avoid those liabilities. However, National Labor Relations Board ("NLRB") decisions "have concluded that while a motive to avoid bargaining can help establish alter ego status, it is not a requirement to finding a violation or liability by the new entity because it is important to protect the interests of the employees, regardless of the employer's motive in making the corporate changes." See, e.g., Allcoast Transfer, 271 N.L.R.B. 1374 (1984). This factor is therefore neutral with respect to alter-ego status.

As stated above, the determining factor in this case is the lack of common ownership between NSC and PSC. Plaintiffs refer to Todd Neier's "constructive ownership" of PSC, but do not offer any facts to show that the Borings' ownership of PSC is a sham and that Todd Neier is PSC's actual owner, or that NSC or Todd Neier have financial control over PSC. Plaintiffs have not cited any authority to support their proposition that the ties of friendship between Todd Neier and the Borings, as opposed to a family relationship, can be a basis for a finding of common ownership. Such a proposition appears contrary to National Labor Relations Board precedent. The NLRB recently stated that "it has only found alter egos in the absence of common ownership where both companies were 'either wholly owned by members of the same family or nearly totally owned by the same individual or where the older company maintained substantial control over the new company.'" Island Architectural Woodwork Inc., __ NLRB __, 2015 WL 2156772 (May 8, 2015) (quoting Cadillac Asphalt Paving Co., 349 NLRB 6, 8 (2007)).

In Cadillac Asphalt Paving, the NLRB held that two employers were neither a single employer nor alter egos in circumstances similar to the instant case. The first company was wholly owned by a Mr. Levy, who had complete operational control over it. The second company was owned 50 percent by Mr. Levy and 50 percent by an entity called MPMC, which had complete operational control over the second company. In reviewing the facts of the case, the NLRB

observed that there was "substantially identical" supervision and operations of the companies' Teamsters Units, and that the two companies had "substantially identical" business purposes, equipment, premises and customers. 349 NLRB at 8. Nonetheless, the NLRB refused to find that the companies were alter egos, stating the evidence of substantial commonalities did not "outweigh the . . . evidence showing separate ownership and control and the lack of identical management, as well as the lack of evidence to suggest that [the second company] was formed for other than legitimate business reasons." Id. The NLRB concluded, "Simply put, too many of the critical factors traditionally relied upon by the Board to support alter ego findings are absent here." Id. (quoted case omitted).

Based on the foregoing precedent, the Court finds that PSC is not an alter ego of NSC despite the substantial commonalities between the companies, because NSC and PSC are not wholly owned by members of the same family or nearly totally owned by the same individual, and there is no evidence that NSC maintains any control over PSC. See Cadillac Asphalt Paving, 349 NLRB at 8. Further, there is no evidence that ownership and management of NSC and PSC are substantially identical. See Campbell-Harris Elec., Inc., 719 F.2d at 296. Because plaintiffs have failed to establish common ownership or control of the two companies such that PSC can be considered the alter ego of NSC, their motion for a creditors bill in equity must be denied.

**V. Conclusion**

For the foregoing reasons, plaintiffs have not shown that Pro Services Contractors, Inc. is the alter ego of defendant Neier Services Company, Inc. Plaintiffs are therefore not entitled to a creditor's bill in equity against Pro Services Contractors, Inc. to satisfy their judgment against Neier Services Company, Inc.

Accordingly,

**IT IS HEREBY ORDERED** that attorney Greg A. Campbell shall provide a copy of Rule 5.2, Fed. R. Civ. P., and this Court's Local Rule 2.17 to each attorney, legal assistant or other person at his law firm who engages in electronic filing or directs others to do so, and instruct them to read the Rules. Any future disclosures of personal data identifiers by plaintiffs or their counsel may result in the imposition of sanctions. Mr. Campbell shall file a verified statement detailing his compliance with this order by **July 10, 2015**.

**IT IS FURTHER ORDERED** that plaintiffs' Amended Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil is **DENIED**. [Doc. 26]


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this ___30th_____ day of June, 2015.